**PUBLIC SERVICE COORDINATED TRANSPORT, Plaintiff,**

v.

**The UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

and

**Trans-Bridge Lines, Inc., Intervening Defendant.**

**Civ. A. No. 358–65.**

United States District Court
D. New Jersey.

Dec. 2, 1965.

Richard Fryling, Maplewood, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., Newark, N. J., for United States.

Raymond M. Zimmet, Washington, D. C., for I. C. C.

Stryker, Tams & Dill, Newark, N. J., for intervenor.

Before McLAUGHLIN, Circuit Judge, and WORTENDYKE and SHAW, District Judges.

McLAUGHLIN, Circuit Judge.

On December 16, 1964, over the protest of the present plaintiff and others, the Interstate Commerce Commission granted the application of Trans-Bridge Lines, Inc. (engaged in the interstate transportation of passengers for hire, as a common carrier by motor bus) for a Certificate of Public Convenience and Necessity authorizing operation in interstate or foreign commerce as a common carrier by motor vehicle over irregular routes transporting passengers and their baggage in special and charter operations over various specified areas.

Having exhausted its remedies before the Commission, plaintiff, in accordance with the statute, 28 U.S.C. Sections 1336, 1398, 2284, 2321–2325 and Title 5, Section 1009, filed this complaint which is in effect an appeal from the Commission's decision.

■ On behalf of plaintiff three points are argued thoroughly and most competently in urging that the Commission ruling be set aside. The first of these is that Trans-Bridge's evidence did not justify issuance of a Certificate of Public Convenience and Necessity. A. Trans-Bridge failed to prove a need for the service; B. Public Service could meet the demand for present and future services.

Our own study of the record reveals ample evidence that applicant's charter and special services in the allocated territory are needed by the public. At least thirty disinterested witnesses, representing a number of business, social, professional, fraternal and religious groups, testified. They presented impressive testimony not only that the particular services are needed but that the said charter and special services being rendered by applicant are good and have been thoroughly satisfactory for many years in the locales involved.

We do not see that plaintiff's contention that it could meet the demand for present and future services is disputed. As we view the whole case this is of no importance decisionally.

■ Plaintiff's second point is that the Commission should have found Trans-Bridge unfit to receive a Certificate of Public Convenience and Necessity. In the application proceeding the Examiner found that Trans-Bridge had failed to publish tariffs for transportation performed as required by Section 217(a) and (d) of the Act. There had been complaint also that Trans-Bridge had been operating between points not authorized by its certificate in violation of Sections 206(a)(1), 207(a) and 208(c) of the Act. The Examiner found that Trans-Bridge had not violated those sections. The Examiner's report and recommended order were filed on March 20, 1964. On June 19, 1964 plaintiff made an additional complaint against Trans-Bridge. It was there charged that on April 22, 1964, Trans-Bridge had instituted a service and was selling tickets for same, based on an operation for which it did not possess appropriate authority. Thereafter in that complaint another charge was filed, alleging a similar later offense of Trans-Bridge. The Examiner in the second proceeding found that the operations complained of were the continuance and extension of those which had been held in the first complaint to have been under the color of right and as to which Trans-Bridge had been exonerated of fault. He concluded that by continuing and extending such operations Trans-Bridge had violated Sections 208(c) and 206(a) of the Act. The Examiner's report and recommended order were filed December 3, 1964. In the report he stated that the Trans-Bridge application and the first complaint against it were then before the Commission. He also noted that Trans-Bridge had requested that consideration of the second complaint be held in abeyance pending final determination of the first proceedings. On December 8, 1964, Division 1 of the Commission filed its decision in the latter. It found that the

applicant had violated Section 217(a) and (d), also 206(a) and 208(c). The 206 (a) and 208(c) violations noted by the Commission concerned operations between points not authorized by applicant's certificate. As to these the Commission, in granting the application, said pp. 514–515 of its report:

"Applicant has fairly demonstrated a continuing need for its proposed service to the extent set forth in our findings. The evidence adequately shows that existing carriers are lacking in authority and ability to provide a service comparable to that offered by applicant in the territory considered herein. Applicant under a color of right has been providing a very satisfactory service for many years, and its patrons have relied on such service. While we do not condone the performance of unauthorized operations, or their use as a means of establishing public convenience and necessity, we note that the violations herein were not willfully or deliberately committed. Compare Melton Truck Lines, Inc., Extension-Roofing, 88 M.C.C. 723. A denial of the application would deprive the traveling public of an established service upon which it has relied for many years. The grant of authority herein should have no materially adverse effect on protestants whose operations and revenues have flourished despite competition from applicant. In the circumstances, we believe that the application should be granted to the extent shown in the findings."

Following the filing of the Commission report, Trans-Bridge on December 30, 1964 formally advised the Commission that the second complaint duplicated the allegations and factual matters of the original proceeding "almost in their entirety" and that the cease and desist order of Division 1 covered the one recommended by the second Examiner; that the second proceeding had, from all practical aspects, become moot, that "If the Examiner's recommendation is permitted to become effective because of the absence of exceptions all that will happen will be the issuance of a cease and desist order already issued by Division 1." Trans-Bridge said that therefore it did not intend to pursue the second complaint action. In accordance with this, it did not file exceptions. The Commission itself did nothing with reference to the recommended order. The latter technically, in line with the Commission practice, became the order of the Commission. By it Trans-Bridge was required " * * * to cease and desist forthwith, and thereafter to refrain and abstain from all operations, in interstate or foreign commerce, found in the said examiner's report to be unlawful, unless and until there is in force with respect to such operations an appropriate certificate of public convenience and necessity."

In its petition for reconsideration of the order of Division 1, plaintiff asked that the findings of the subsequent violations by Trans-Bridge in connection with the second complaint be considered with particular reference to the fitness of Trans-Bridge to receive a certificate. The final order of the Commission was entered February 25, 1965. This recited that reconsideration had been given to the questions raised by plaintiff and stated "It is ordered that the said petitions be and they are hereby denied, for the reason that the findings of Division 1 are in accordance with the evidence and applicable law."

We are satisfied from the whole record that Division 1 of the Commission was completely conversant with the second complaint and the report and recommendations of the Hearer. It is also apparent that the decision in the application and complaint proceedings was drafted and filed with the second complaint case and its conclusions and recommendations in mind. Clearly, the Commission decision was to dispose of the application and its collaterals finally. It might have been tidier to mention the second complaint affirmatively. However, it was substantially covered by the scope of the decision and designedly so. The holding that the

violations by Trans-Bridge were not enough to destroy the sound merits of its application was within the expert discretion of the Commission. In our view that discretion was soundly exercised. To remand this litigation to the Commission for the purpose of formally closing out the second complaint would be a wholly unnecessary, time consuming gesture. Above all, it would result in entirely uncalled for hardship to the proportionately considerable part of the public deprived of the transportation in question for a further lengthy period.

Plaintiff's final point is that "The order of the Interstate Commerce Commission is unlawful." The proposition argued here is that the Commission has failed to show a basis upon which its finding has been made. This is virtually a restatement of plaintiff's second point. Again, the Examiner's report, especially his finding that applicant was guilty of subsequent violations, is stressed. Everything possible is presented concerning plaintiff's request for reconsideration of that finding and that the Commission consider its effect, that the Commission should consider such fact under Schenck Tours, Inc., Extension-Nassau, 96 M.C.C. 66 and that the plaintiff asked for a determination on applicant's fitness in the light of the said violations. The complete answer to these contentions, is that the Commission on the petition for reconsideration had all of the above arguments before it. The Commission also had before it the full record of the case, including everything with reference to the second complaint. And it had the detailed opinion of its Division 1 which, as we have held above, adequately covered the subsequent violations. From that thorough knowledge of the total situation, the Commission in its expert judgment denied the petition for reconsideration "for the reason that the findings of Division 1 are in accordance with the evidence and applicable law." There was no need for elaboration of that order. The grounds advanced for reconsideration did not call for reversal of Division 1. There is not one word in this record validly supporting the suggestion that the violations continued after the cease and desist order. As we have already indicated, Division 1, under all the undenied circumstances, had rightly concluded that the manifest merits of the application should not be defeated by the de minimis violations of Trans-Bridge. The Commission, well within its proper discretion and with the plaintiff's objections outlined in meticulous detail before it, affirmed the findings of Division 1 as "in accordance with the evidence and the law." We find nothing arbitrary or capricious about that decision. We hold it to be in accordance with the evidence and the governing law.

Our findings of fact and conclusions of law sufficiently appear in this opinion and therefore will not be repeated separately.

An order will be entered dismissing the complaint, dissolving the temporary restraining order and directing that judgment be entered in favor of the defendant.