**ARMORED CARRIER CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants,

and

**B. D. C. Corporation, Intervenor.**
Civ. A. No. 65–C–1298.

United States District Court
E. D. New York.

Sept. 28, 1966.

Derounian, Candee, Guardino & Murphy, New York City, for Armored Carrier Corp.

Joseph P. Hoey, U. S. Atty., for the United States and Interstate Commerce Commission; Nahum Litt, Washington, D. C., of counsel.

Rosenman, Colin, Kaye, Petschek & Freund, New York City, for B. D. C. Corp.

Before MOORE, Circuit Judge, and BARTELS and MISHLER, District Judges.

MISHLER, District Judge.

This action instituted pursuant to 28 U.S.C. §§ 2321–2325 seeks to vacate and set aside an order of the Interstate Commerce Commission dated June 30, 1965 (served July 14, 1965), in which it

1. Dismissed the complaint of the plaintiff (No. MC–C–3480),

**614**

2. Granted the application of B.D.C. Corporation (B.D.C.) the Intervenor, for a certificate of public convenience and necessity permitting the operation by B. D. C. as a common carrier of commercial paper, documents, and written instruments used in the conduct and operation of banks and banking institutions between Chicago, Illinois and points in five Wisconsin counties [No. MC–114533 (sub. No. 32)].

The complaint proceeding was initiated by the plaintiff on November 27, 1961, and charged B.D.C. with knowingly and willfully conducting unauthorized operations in interstate commerce between Chicago and the five Wisconsin counties. On December 1, 1961, B.D.C. applied for a certificate of public convenience and necessity between Chicago and the aforementioned five counties, and for temporary authority pending the determination. Emergency temporary authority was granted December 6, 1961, and temporary authority on January 2, 1962.

B.D.C. had received authority to transport cash letters between Chicago and 15 counties in Wisconsin in an I.C.C. certificate issued April 4, 1957. The five counties in question lay between Chicago and the 15 counties that B.D.C. was authorized to service.

The report of June 30, 1965 discusses the manner of B.D.C.'s operation, the need of the so-called "country banks" of the service offered and the sufficiency and efficiency of B.D.C.'s facilities, equipment and manner of operation. The report discusses 4½ years of unauthorized service to the five counties beginning in 1957. It found the unauthorized operations were inadvertently begun.[1] The report (p. 131) found "the

evidence [of past unauthorized operations] does not require a finding of unfitness." It further found,

" * * * that applicant is fit, willing and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act, and the rules and regulations of the Commission thereunder * * *."

I. *B.D.C.'s unauthorized operations for four years prior to filing of the complaint.*

■ The Interstate Commerce Commission (I.C.C.), Division I, found that the operations in question "were inadvertently begun." A question exists, due to the language used in the report, as to whether the continued unauthorized operations during the four-year period, 1957–1961, were "willfully performed" or continued to be inadvertent and in good faith. If the latter is the fact, such operations, albeit unauthorized, would be no bar to a grant of authority. See Interstate Common Carrier Council of Maryland v. United States, 1949, D. Md., 84 F.Supp. 414, aff'd mem., 338 U. S. 843, 70 S.Ct. 91, 94 L.Ed. 516 (per curiam). For the purposes of this issue, we consider that the Commission found the operations to be inadvertently begun but knowingly and willfully continued.

■ No case has been called to the Court's attention that declares that the knowing and willful performance of unauthorized operations is, as a matter of law, a bar to a grant of authority. Absent pertinent authority, and since the Commission is the expert in the field of transportation, East Texas Motor Freight Lines, Inc. v. Frozen Foods Express, 1956, 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917, its views should be entitled

---

1. When B.D.C. instituted operations under its new certificate in May 1957 it also instituted operations between Chicago and points in Kenosha County and, in addition, Walworth, Jefferson, Dodge, and Columbia Counties. The last four were counties which were not named in the 1956 application. These five counties are in B.D.C.'s line of haul between Chicago and the other 15 counties. B.D.C. thought it had been granted authority to serve these along with the other 15 counties. Because of this and the inexperience of its management these operations were inadvertently begun.

to special consideration. I.C.C. v. Nelson Coop. Marketing Ass'n, 1962, W.D. Okla., 209 F.Supp. 697, 701. The Commission's view appears clear—past knowing willful conduct in violation of the Act and the rules and regulations thereto, is an element to be considered in the determination of present and future fitness. Thus, in McLaughlin Common Carrier Application, 73 M.C.C. 318, the I.C.C. stated: " * * * applicant's past record leaves a great deal to be desired * * * [but] the record established * * * applicant's resolve in the future to live within the letter and the spirit of the law." Antietam Transit Co., Inc. Common Carrier Application, 84 M.C.C. 459 is not to the contrary. There the Commission found not only that *Antietam* performed prior willful unauthorized operations, but further that "its unauthorized operations were continued, even after the hearing in the instant application was held. * * *"

The corporation is a form of business enterprise in which change of management and improvement in systems and controls may result in a radical change in the corporate capability to perform its operations. It would appear impractical and unrealistic to conclude that the I.C.C. lacks discretionary authority to determine whether a corporation is presently "fit" to perform its proffered services. The argument that past willful violations should, per se, bar a grant of authority in the present and for the future is one that looks backward and appears transfixed. Examination of the past should only be useful in assessing the prospective conduct of the applicant. Such assessment is one peculiarly within the expertise of the I.C.C. and should not be interfered with unless found to be arbitrary and capricious.

■ Accordingly, we find that past willful misconduct is not, as a matter of law, sufficient to bar a grant of authority. Rather, the I.C.C. is to consider such willful misconduct as an element in assessing the applicant's present and prospective "fitness" within the Act.

II. *The Commission's failure to make a specific finding on the issue of "willfulness".*

■■ Section 14(1) of Title 49, U.S.C. provides:

Whenever an investigation shall be made by said Commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises; and in case damages are awarded, such report shall include the findings of fact on which the award is made.

Under this section and section 8(b) of the Administrative Procedure Act [5 U.S.C. § 1007(b)] the Commission must make a written report setting out its findings, conclusions and decisions, together with its reasons therefor. It is, however, not required to make the detailed findings of fact required by Rule 52(a) of the Federal Rules of Civil Procedure. See Chicago & E. I. R. R. v. United States, 1952, S.D.Ind., 107 F. Supp. 118, aff'd mem., 1953, 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707 (per curiam). Thus, if the report contains subsidiary findings of fact sufficient to lend adequate and rational support to the order, the Court must uphold the Commission's conclusions. Alabama Great So. R. R. v. United States, 1951, 340 U.S. 216, 71 S.Ct. 264, 95 L.Ed. 225; see United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; State of Florida v. United States, 1931, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291.

The Commission made the following subsidiary findings of fact relevant to the ultimate determination of "fitness":

(1) That the unauthorized operations were inadvertently commenced;

(2) That the unauthorized operations performed in the five counties in question were in B.D.C.'s direct line of haul between Chicago and the fifteen counties in which it was authorized to operate since 1956;

(3) That B.D.C. initially thought that it had been granted authority to serve the five counties in question along with the other fifteen counties;

(4) That one of the five counties in question, i.e., Kenosha, was named in B.D.C.'s 1956 application and, for an unexplained reason, excluded from the grant of authority therein;

(5) That B.D.C. is financially fit to conduct operations in the five counties in question;

(6) That B.D.C. carries adequate insurance, including reconstruction insurance;

(7) That B.D.C. furnishes vaults to its customers;

(8) That B.D.C. operates on a regular daily schedule, six days per week; and

(9) That the supporting shippers find B.D.C.'s services satisfactory and desire their continuance.

The Commission did not make specific subsidiary findings in respect of the issue of willfulness. Plaintiff argues that since it had raised that issue before the Commission and that since the alleged willfulness of B.D.C.'s misconduct forms the basis for its complaint, the Commission must make specific subsidiary findings on that issue; plaintiff concludes that absent such finding the Commission's report cannot lend adequate support to its Order. To complement this argument, plaintiff also contends that absent such a finding a reviewing court would be unable to comprehend the basis for the Commission's ultimate determination.

In Southern Kan. Greyhound Lines, Inc. v. United States, 1955, W.D.Mo., 134 F.Supp. 502, aff'd mem., 1956, 351 U.S. 921, 76 S.Ct. 779, 100 L.Ed. 1453 (per curiam) plaintiff argued:

* * * though the Commission's report took notice of their contentions that they are operating on such a close margin that they cannot stand any diversion of traffic without deteriora-

tion in the standards of their service, and that the proposed new service by Trails would result in a competitive situation destructive to them and their service, it did not make a specific subordinate finding upon that issue, * * * but made only the ultimate finding that the proposed service 'is or will be required by the present or future public convenience and necessity', and that, therefore, the findings are not sufficient to support the orders.

In ruling against plaintiff Judge (later Justice) Whittaker placed great emphasis on Luckenbach S. S. Co. v. United States, 1954, S.D.N.Y., 122 F.Supp. 824, aff'd mem., 347 U.S. 984, 74 S.Ct. 850, 98 L.Ed. 1120 (per curiam). There, Judge Augustus N. Hand held that the I.C.C. had considered the issues raised and that specific findings thereon were unnecessary. He stated:

"It is only necessary that the essential basis of the Commission's order appear in the report so that a court can satisfy itself that the Commission has performed its function";

and concluded:

"* * * Thus, where the issue raised does not seem of manifest importance and the Commission had indicated that it has considered it, we do not think it wise or necessary to protract the litigation further by remanding the order for more explicit and seemingly useless discussion."

*Luckenbach* is not in conflict with United States v. Pierce Auto Freight Lines, Inc., supra, since there the Court found that the Commission had failed to consider the subordinate issues raised.

The report clearly demonstrates the attention and consideration given by the I.C.C. to plaintiff's claim that the unauthorized operations were "knowingly and willfully performed." The Commission expressly refers to the fact that the examiner in the complaint proceeding "found that B.D.C. had willfully performed the considered operations without authority." And the dissenting opinion declares that the "unlawful opera-

tions [of B.D.C.] * * * can only be viewed as knowing and willful violations of the act." Furthermore, the Commission in its discussion of "fitness" concluded "that the evidence as to these operations does not require a finding of unfitness." In so doing, it must have placed some emphasis on subordinate findings numbered one through four above, all of which are relevant to the issue of willfulness. Furthermore, implicit in such conclusion is the subsidiary finding either (1) that the operations continued to be conducted inadvertently and in good faith or (2) that the operations in question were "knowingly and willfully" continued but that such willful misconduct was not sufficient, considering all other relevant findings, to bar a grant of authority.

■ Since it is clear that the I.C.C. gave adequate consideration to the subsidiary issue of willfulness, the only issue remaining is whether the issue of "willfulness" is of such "manifest importance" in the instant case that a specific subordinate finding thereon must be made.

We think not.

In the instant case, it is irrelevant which of the alternative findings the Commission made, since the findings in the report clearly show that the ultimate finding that the "applicant is fit, willing and able properly to perform such service" would remain the same. The specific subordinate findings in the report are sufficient to lend adequate and rational support to the order; the Court must uphold the Commission's conclusions.

To remand this case would be useless. As the Court stated in Kweskin v. Finkelstein, 1955, 7th Cir., 223 F.2d 677:

We are reluctant to remand this or any other case in order to have the proper findings entered. We realize that such a remand will involve a delay and additional expense for each of the parties. Under Title 28 U.S.C.A. § 2106 we have the authority to * * * and we might consider the failure to

make adequate findings of fact as non-reversible error if we can ascertain from the record that one party or the other is clearly entitled to judgment in his favor.

This statement and that of Judge Hand are apparently outgrowths of that line of decisions that holds that an appellate court must affirm a decision of a trial court if it is correct, and even though the latter relied upon a wrong ground or gave a wrong reason for its decision, Yanish v. Barber, 1956, 9th Cir., 232 F.2d 939; the decision must be affirmed on any grounds that find support in the record. Jaffke v. Dunham, 1957, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314; United States v. Rose, 1965, 3d Cir., 346 F.2d 985.

### III. *Commission's findings supported by substantial evidence.*

■■ In considering this issue it is elementary that the reviewing court is limited to a determination as to whether the Commission's findings are supported by substantial evidence upon the record as a whole. See Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Mississippi Valley Barge Line Co. v. United States, 1966, E.D.Mo., 252 F.Supp. 162; Administrative Procedure Act § 10(e), 5 U.S.C. § 1009(e). It is clear that there is substantial evidence in the record to support the Commission's findings in this case; and its findings and conclusions are neither arbitrary nor capricious.

■ The law is clear that a court, in reviewing an administrative proceeding, is confined to the record made before the agency; it is not a trial de novo. See National Broadcasting Co. v. United States, 1943, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344; Southern Kan. Greyhound Lines, Inc. v. United States, supra. The Criminal Information and the judgment of conviction (dated July 8, 1966) offered by plaintiff subsequent to the hearing, although not properly before us has been considered but does not call for reopening the case or for a contrary result.

The complaint is dismissed. The Clerk is directed to enter judgment accordingly.

BARTELS, District Judge.

I regret that I must dissent from the conclusion of the majority.

This case involves two related decisions of Division I of the Interstate Commerce Commission rendered on June 30, 1965, which the plaintiff, Armored Carrier Corporation, seeks to set aside. The first decision granted the intervenor B.D.C. Corporation authority as a common carrier to transport cancelled checks (known as cash letters) between Chicago, Illinois and five Wisconsin counties, reversing a contrary determination by Examiner Bernard J. Hasson. The second decision affirmed a determination by Examiner William Cave that the Commission's grant of emergency temporary authority to B.D.C. to serve the aforementioned five counties rendered moot a complaint by Armored that B.D.C. was serving these counties without the permission of the Commission. In both proceedings which were heard together by the Commission, the central issue was whether certain unauthorized operations and other derelictions by B.D.C. precluded it from satisfying the statutory criteria for a certificate of convenience and necessity.[1] These violations may be catalogued as follows: (1) B.D.C. engaged in unauthorized operations over a four-year period between Chicago, Illinois and five counties in Wisconsin—Columbia, Dodge, Jefferson, Kenosha, and Walworth; (2) the vice-president of B.D.C. stated falsely that these unlawful operations had been discontinued when applying for temporary authority to serve these counties on November 27, 1961; (3) B.D.C. engaged in unlawful intrastate operations in Wisconsin; (4) B.D.C. unlawfully provided free interstate service to certain banks in operations between Chicago, Illinois and parts of Wisconsin; and (5) B.D.C. billed customers every thirty days contrary to the Commission's seven-day requirement.

The hearings in both proceedings were held in 1962 and 1963 before different joint boards of the Commission in accordance with 49 U.S.C.A. § 305. When neither of these boards could agree on a disposition of the matter before them, each referred its case to an examiner who rendered a decision based on the pre-existing "cold" record. Examiner Hasson recommended that permanent authority to serve the five Wisconsin counties be denied because B.D.C. "knowingly and wilfully committed * * unauthorized operations" which were continued "despite a sworn statement by an officer of the corporation to the contrary". In the opinion of Examiner Hasson, these derelictions rendered it "doubtful that applicant can be trusted to comply with the obligations of regulated carriers" and mandated a finding that "applicant has not met the statutory burden of demonstrating its fitness". Examiner Cave fully agreed with Examiner Hasson's characterization of the violations as willful but felt constrained under the circumstances to dismiss the complaint before him on the ground of mootness.

Both of these decisions were appealed by the respective parties to a three man panel of the Commission (Division I) which by a 2–1 vote reversed Examiner Hasson and found B.D.C. to be "fit". In reaching this decision, the majority of the Commission stated that the unauthorized operations were "inadvertently begun", that "past unauthorized operations do not necessarily act as a bar to a grant of authority to perform a needed service" and that "while we do not condone applicant's past unauthorized operations, we conclude that the evi-

---

1. The pertinent statute, 49 U.S.C.A. § 307 (a), provides in part that "a certificate shall be issued to any qualified applicant therefore * * * if it is found that the applicant is fit, willing and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder * * *."

dence as to these operations does not require a finding of unfitness * * *." While the majority opinion is curiously silent on the issue of whether the continued violations were or were not willful, the dissenting opinion unequivocally states that the willful character of the violations bars a finding of fitness.

At the time the Commission reversed Examiner Hasson, it affirmed Examiner Cave's decision that Armored's complaint against B.D.C. should be dismissed for mootness. After unsuccessfully petitioning the Commission for reconsideration and rehearing, Armored brought the present action on December 3, 1965, seeking both a preliminary and a permanent injunction. Since emergency temporary authority was granted to B.D.C. on December 6, 1961, and temporary authority on January 2, 1961, the Commission's affirmance of the dismissal of Armored's complaint against B.D.C. on the ground of mootness was proper. Moreover, since the Commission issued to B.D.C. a certificate of public convenience and necessity on January 12, 1966, a preliminary injunction is no longer available. Only the propriety of the order granting a certificate of public convenience and necessity may now be considered.

## I

Armored contends that the Commission failed to articulate the basis for its decision that B.D.C. was "fit" because it never expressed a view as to whether or not B.D.C.'s admitted illegal acts were knowingly and willfully performed. This failure, the plaintiff argues, is the vice of the decision because the Court is left to guess as to what the Commission intended. Armored also asserts that the violations were knowingly and willfully done precluding a finding of fitness and that any other result would not be supported by substantial evidence in the record.

B.D.C. claims that the majority of the Commission panel found, contrary to the Examiners, that its unauthorized operations were not willfully conducted but in fact were inadvertent and excusable. It bases this conclusion on the fact that the Commission obviously did not ignore the issue of willfulness since it stated that the unauthorized operations were "inadvertently begun" and do "not require a finding of unfitness". It further contends that the Examiners' conclusions must be ignored since there is substantial evidence in the record to support the Commission's finding which carries with it the necessary implication that the violations were non-willful. It excuses its violations as "obviously not serious" or "clearly minimal" or "done on the advice of counsel". As far as false statements by an officer are concerned, B.D.C. claims that the officer "was then a sick man" who "shortly thereafter took an extended leave of absence". The Government, in support of B.D.C.'s position, asserts that the violations were non-willful, repeating a number of B.D.C.'s contentions and stressing the fact that B.D.C.'s "admitted and alleged unauthorized operations comprise only a narrow facet of the totality of the make-up of a finding of fitness". It concludes that B.D.C. is eminently well qualified in the areas of operational efficiency and financial security to perform the needed services.

## II

The issue here is whether the Commission's ultimate finding that B.D.C. is fit and should be granted a certificate of convenience and necessity, is supported by basic or subsidiary findings in the record. The majority concludes that B.D.C.'s four years of unauthorized operations do not, as a matter of law, bar the Commission's finding of fitness, citing nine subsidiary findings of the Commission in support of its ultimate finding of fitness. Five of these findings refer to B.D.C.'s ability to perform and the shippers' desire for continuation of its service. It appears from the Act that the issue of fitness is distinct and separate from the issue of ability and willingness to properly perform. Consequently, these findings are irrelevant to the issue as are the remaining find-

ings except the one which states that the unauthorized operations were "inadvertently begun", although even this finding does not indicate that such unauthorized operations were inadvertently continued.

I believe that we cannot take a too restrictive view of the burden Congress intended to impose upon the Commission to examine and determine the fitness of an applicant for a certificate of public convenience and necessity. To approve a holding by the Commission without supporting findings that such an applicant is fit to perform an important public service despite four years of unauthorized operations plus other derelictions as earlier set forth, promotes in my opinion a dangerous precedent. An applicant must be fit and willing not only to properly perform the service but also to conform to the requirements of the Interstate Commerce Act and the rules and regulations of the Commission thereunder. If the past conduct of B.D.C. satisfies these requirements, the Commission offers no subsidiary finding or statements to support such a conclusion.

While it is elementary that the Commission's findings of fact cannot be set aside or disturbed if they are supported by substantial evidence (United States v. Pierce Auto Freight Lines, 1946, 327 U.S. 512, 66 S.Ct. 686; Safeway Trails, Inc. v. United States, D.C.D.C.1964, 234 F.Supp. 362, 365; Campus Travel, Inc. v. United States, S.D.N.Y.1963, 224 F. Supp. 146), nevertheless the ultimate finding of fitness must be supported by basic findings of fact in order that the Court may determine whether the ultimate fact is founded upon substantial evidence. Moreover, the " * * * common approach seeking to dichotomize all decisions as either 'law' or 'fact' is too simplistic; a reviewing court must often dissect the judgment into its component parts. Cf., Baranow v. Gibraltar Factors Corp., 366 F.2d 584 (2 Cir. 1966)." Artvale, Inc. v. Rugby Fabrics Corp. and Barmil Associates, Ltd., 363 F.2d 1002, 1005, (2 Cir.

1966). Here the ultimate finding of fitness is predicated upon an application of the law to the facts. If we dissect the Commission's judgment into its component parts, we discover that the necessary component of subsidiary findings, is missing and that the Commission abdicated its obligation in this respect and has thus short-circuited the administrative process.

The majority suggests that Southern Kansas Greyhound Lines v. United States, W.D.Mo.1955, 134 F.Supp. 502, aff'd, 1956, 351 U.S. 921, 76 S.Ct. 779, indicates that the Commission need not make specific findings. Neither that case nor Luckenbach S. S. Co. v. United States, S.D.N.Y.1954, 122 F.Supp. 824, aff'd, 347 U.S. 984, 74 S.Ct. 850, also cited by the majority in the same context, can be stretched to cover the facts in this case. In Southern Kansas Greyhound Lines v. United States, supra, Mr. Justice Whittaker stated that a distinction must be made between "what the Commission must *hear and consider* and what it must *specifically find in its report*". In both cases the Commission made a finding as to the applicant's fitness and ability supported by subsidiary findings, but did not make a specific finding upon the subsidiary issues of the effect upon existing carriers of the new service to be rendered by the applicant. Section 14(1) of the Interstate Commerce Act, 49 U.S.C.A. § 14(1), requires a finding by the Commission of fitness and ability but does not require a finding with respect to the detrimental effect of granting a certificate upon competitive carriers. As Mr. Justice Whittaker said " * * * Of course § 14(1) does not relieve the Commission of the duty to make the 'basic' or 'quasi-jurisdictional' findings essential to the statutory validity of an order." (p. 508). Basic findings differ with the type of order invoked. " * * * [T]he basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented." Alabama Great Southern R. Co. v. United States,

1951, 340 U.S. 216, 228, 71 S.Ct. 264, 272, 95 L.Ed. 225.

In United States v. Pierce Auto Freight Lines, supra, the Court specifically held that the finding of fitness, willingness and ability of a motor carrier required basic findings to support it. In referring to the District Court's statement that the Commission had failed to find that the applicant was adequately equipped to render the service, stated " * * * What was obviously meant was that such an ultimate finding was not enough, as of course it was not, see State of Florida v. United States, supra, in the absence of a basic finding to support it; and that there was no such basic finding." (327 U.S. p. 533, 66 S.Ct. p. 696). As explained in State of Florida v. United States, 1931, 282 U.S. 194, 215, 51 S.Ct. 119, 125:

" * * * In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. The Commission is the fact-finding body, and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported."

and also in Burlington Truck Lines, Inc. v. United States, 1962, 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207:

"There are no findings and no analysis here to justify the choice made, no indication of the basis on which the Commission exercised its expert discretion. We are not prepared to and the Administrative Procedure Act will not permit us to accept such adjudicatory practice."

In granting its certificate to B.D.C., the Commission found in the statutory language that the applicant was fit, concluding that evidence as to past unauthorized operations "does not require a finding of unfitness" and admonishing B.D.C. that it was expected to behave in the future by complying with the Commission's rules and regulations. This ultimate finding is not enough.[2] In order that the Court may adequately review the validity of the Commission's conclusion, it is necessary that the Court comprehend the basis for this finding of fitness. This is not possible without supporting statements explaining whether the unauthorized acts were willful or negligent transactions and, in either event, to what extent if any, such finding or findings affect the conclusion. With such findings the Court would then be able to ascertain whether the conclusion of fitness was properly supported. " * * * In short, this court is at a loss to know just what the Commission has found or how the Commission has reasoned on the basis of its findings. At least for this reason, the court cannot give its seal of approval to the Commission's disposition of the matter." Nashua Motor Express, Inc. v. United States, D.C.N.H.1964, 230 F. Supp. 646, 650.[3] Apparently, the Commission predicated its opinion primarily upon a desire to comply with the shippers' need for services rendered by B.D.C. and by the expectation that the applicant would hereafter conform to the Commission's rules and regulations. I find no authority, statutory or otherwise, to justify a finding of fitness upon such a premise.[4]

2. Sinett v. United States, D.C.N.J.1955, 136 F.Supp. 37.

3. If the Commission found that these unauthorized operations were non-willful, it is difficult to understand why it has instituted a criminal proceeding against the applicant for knowingly unauthorized operations. In fact, on July 8, 1966, after B.D.C. entered a plea of *nolo contendere* in the United States District Court for the Western District of Wisconsin, it was adjudged guilty as charged and fined $200 on each of ten counts.

4. See the decision of the full Commission in Antietam Transit Company Inc. Common Carrier Application, 84 M.C.C. 459 (1961), reversing a decision of Division I in Antietam Transit Company, Inc. Common Carrier Application, 83 M.C.C. 175 (1960). In the latter case Com-

The Commission's statement that the unauthorized operations were "inadvertently begun" is not a finding that for four years thereafter they were inadvertently continued. Moreover, it made no attempt to determine whether the other derelictions of B.D.C. were willful or unintentional. In the past when unauthorized acts were involved, the Commission predicated its determination of the question of fitness upon whether the unauthorized transactions were willful or nonwillful,[5] but in the instant case it has chosen to avoid this issue.

Speculation as to the basis of the Commission's determination of fitness is insufficient to enable a review of its conclusion. " * * *[A] simple but fundamental rule of administrative law * * * is that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action * * *. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency." Securities and Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995.

Therefore I would remand the case for further findings in accordance herewith.

---

missioner Murphy in dissenting stated that "I am unable to agree with the majority that we may properly excuse these willful unlawful operations and grant authority simply because a need for service has been established, even if it is assumed that such a need for service merits characterization as an 'overriding public need.'" (pp. 181–182). In the former case the full Commission stated that "We are of the opinion that applicant's willful and deliberate performance of unauthorized operations and its continued refusal to abide by the provisions of the act require a conclusion that it is not fit properly to conduct the proposed operation, and that the application should be denied." (p. 461). But cf., Myers Common Carrier Application, 89 M.C.C. 125 (1962).

5. For example, in the following cases the Commission found that the violations were willful and denied the application: Antietam Transit Company, Inc. Common Carrier Application, 84 M.C.C. 459 (1961); Newmarket Coach Lines, Limited, Common Carrier Application, 84 M.C.C. 264 (1960); Haywood Trucking Company Contract Carrier Application, 81 M.C.C. 437 (1959), and in the following cases the Commission found that the violations were non-willful or non-recurrent and granted the application: Rushing Common Carrier Application, 84 M.C.C. 430 (1961); Public Service Coordinated Transport v. United States, D.C.N.J.1965, 247 F.Supp. 985; A.B. & C. Motor Transport Co. v. United States, D.C.Mass.1946, 69 F.Supp. 166. For additional cases illustrating this dichotomy see 3 Consolidated Current Index to Decisions of the Interstate Commerce Commission, Feb. 1956–Dec. 1963 (Chapter 23, ¶ 23.60–23.64). In the present case the Commission asserted that "we find the examiners' statements of fact to be substantially correct, and as modified herein we adopt them as our own". To what extent, if any, the modifications included a disavowal of the willful character of the unauthorized operations for the four-year period or of the other derelictions is far from clear. This illustrates the absence of an adequate basis for a proper review by the Court.