**CRETE CARRIER CORPORATION, a corporation, Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents,**

**Smithway Motor Xpress, Inc., Intervenor-Respondent.**

**No. 77–1765.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1978.

Decided June 1, 1978.

John H. Shenefield, Asst. Atty. Gen., John J. Powers, III and Robert Lewis Thompson, Attys., Dept. of Justice, Mark L. Evans, Gen. Counsel, Frederick W. Read, III, Associate Gen. Counsel and David Popowski, Atty., I. C. C., Washington, D. C., for respondents.

Richard A. Peterson, Lincoln, Neb., for petitioner.

Arlyn L. Westergren, Omaha, Neb., for intervening respondent.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

---

* The Honorable TALBOT SMITH, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

ROSS, Circuit Judge.

Crete Carrier Corporation (Crete Carrier) has petitioned this court to set aside an order of the Interstate Commerce Commission. The order in question affirmed an order of the Commission's Review Board Number 3 granting common carrier operating authority to Smithway Motor Xpress, Inc. (Smithway). We deny Crete Carrier's petition.

## I.

On February 16, 1976, Smithway filed an application for a motor carrier certificate or permit, to operate as a common carrier by motor vehicle, over irregular routes, in the transportation of iron and steel articles, between plantsites and warehouse facilities of Douglas & Lomason Co. (D & L), at Marianna, Arkansas, Red Oak, Iowa, and Columbus, Nebraska.

Three motor carriers, including Crete Carrier, filed timely protests.[1] Crete Carrier contended that the authority sought conflicted with authority already issued to it, and that any diversion of traffic to a new carrier would be detrimental to its operations. It requested an oral hearing.

On June 2, 1976, the Commission ordered that the proceeding be handled under its modified procedure without a hearing. It ordered that all evidence be submitted in the form of verified or sworn statements.

Smithway and D & L filed verified statements in support of Smithway's application; Crete Carrier filed verified statements in opposition; and Smithway and D & L filed rebuttal statements and a motion to strike portions of one of Crete Carrier's statements. Crete Carrier then filed a request for an oral hearing and cross-examination, alleging that there were certain material facts in dispute. Smithway opposed this motion.

On January 19, 1977, Review Board Number 3 issued its order denying Smithway's motion to strike portions of Crete Carrier's statement; finding no disputed issue of fact material to its disposition in the proceeding which could not be properly resolved on the basis of the evidence in the verified statements, and therefore denying Crete Carrier's request for a hearing; and granting Smithway's application.

Crete Carrier petitioned the Commission to reconsider the Review Board's decision. On August 1, 1977, Division 1 of the Commission affirmed the decision of the Review Board. Crete Carrier then filed its petition in this court.

In this proceeding Crete Carrier contends that the Commission erred in refusing to grant its request for oral hearing and cross-examination, and in failing to resolve material factual issues.

## II.

We note at the outset that the formulation of administrative procedures is "basically to be left within the discretion of the agencies * * *." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* —— U.S. ——, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). In 1966 the Commission instituted the modified procedure for licensing motor carriers. Once the Commission has ordered that a proceeding be put on the modified docket and verified statements have been submitted, an oral hearing will not be held unless material facts are in dispute and the statements do not provide an adequate basis for their resolution. The courts have "upheld the Commission's authority to handle applications involving more than three states through 'modified Procedure.'" *Ruan Transport Corp. v. United States,* 361 F.Supp. 371, 374 (S.D.Iowa 1973), *citing Boat Transit, Inc. v. United States,* 1970 Federal Carrier Cases, Section 82,215 (E.D.Mich.1970), *aff'd,* 401 U.S. 928, 91 S.Ct. 934, 28 L.Ed.2d 210 (1971).

It is with this in mind that we review Crete Carrier's allegations of error.

---

1. The two protesting carriers other than Crete Carrier Corporation are not involved in this proceeding.

### III.

Crete Carrier contends that there were four areas of dispute requiring an oral hearing and cross-examination for their resolution: 1) past illegal operations by Smithway; 2) Crete Carrier's dedication of flatbed trailers to the exclusive use of D & L in the past; 3) Crete Carrier's present ability to meet D & L's needs; and 4) Crete Carrier's transportation of the involved traffic in the past.

In his verified statement in opposition to Smithway's application, Duane Acklie, president of Crete Carrier, stated that he had personally been informed by representatives of D & L and by his own employees that Smithway was performing the for-hire transportation which was the subject of its application, without the appropriate authority. He gave no specific circumstances or dates of these alleged incidents.

Robert Brewer, traffic manager for D & L, had stated that D & L had been using the services of Ligon Specialized Haulers to handle the traffic in question. Crete Carrier submitted the verified statement of Steve Ligon indicating that his company had not been performing those services. Crete Carrier suggested that the services were being performed by Smithway.

In his rebuttal statement Brewer denied that Smithway was performing illegal services for D & L. He stated that Smithway moved iron and steel articles for D & L between the St. Louis, Missouri area and D & L's various plants, and suggested that Acklie had misconstrued or misunderstood statements about the services Smithway was performing. Brewer did admit that he had inadvertently indicated that D & L was using Ligon to handle the involved traffic and that Ligon was not handling the interplant movements involved in this application. He did not state who was currently handling that traffic.

Crete Carrier contends that this clearly evidences a dispute over facts and that the issue involved was material to the Commission's decision on Smithway's application. It argues that to sustain a grant of its application, Smithway had to establish that it is fit to conduct the proposed operations and is willing and able to abide by the terms of the Interstate Commerce Act and the Commission's rules and regulations; and that if Smithway had been operating illegally in the past a denial of this application would be warranted on the grounds of unfitness.

The Review Board found Crete Carrier's allegations to be "vague and general in nature * * *." We agree. Crete Carrier failed to "specify with particularity the facts, matters, and things relied upon * * *." 49 C.F.R. 1100.247(d)(3). Its protests, phrased in general terms, could have been rejected. *Id.*

Furthermore, even if the allegations were true, prior unauthorized operations by an applicant are not, as a matter of law, a bar to a grant of the requested authority. *Armored Carrier Corp. v. United States,* 260 F.Supp. 612 (E.D.N.Y.1966), aff'd per curiam, 386 U.S. 778, 87 S.Ct. 1476, 18 L.Ed.2d 524 (1967). *See also National Trailer Convoy, Inc. v. United States,* 381 F.Supp. 878, 883 (N.D.Okl.1973), aff'd sub nom., *Morgan Drive Away, Inc. v. United States,* 416 U.S. 976, 94 S.Ct. 2377, 40 L.Ed.2d 755 (1974); *Slay Transportation Co. v. United States,* 353 F.Supp. 555, 559 (E.D.Mo.1973); and *AAACON Auto Transport Inc. v. United States,* 317 F.Supp. 1314, 1316 (S.D.N.Y. 1970). Past violations of Commission rules and regulations are only one element to be considered in determining the applicant's present and future fitness for the requested certificate. *Armored Carrier Corp. v. United States, supra,* 260 F.Supp. at 615. The ICC has the particular expertise to evaluate an applicant's fitness. *St. Johnsbury Trucking Co. v. United States,* 326 F.Supp. 938, 943 (D.Vt.1971).

Although Crete Carrier's allegations were vague and general, the Commission did not sustain Smithway's motion to strike those statements. It considered Crete Carrier's contentions but, in its discretion, granted the requested authority anyway. We cannot say it abused its discretion in so doing, or that it was error not to hold a hearing on the issue.

Crete Carrier's other three contentions concern alleged disputes about its willingness and ability to meet D & L's needs. Acklie stated that Crete Carrier dedicated flatbed trailers to the exclusive use of D & L between 1968 and 1975. Brewer denied that statement. Thus, Crete Carrier contends its past dedication of flatbed trailers to D & L was a disputed issue requiring an oral hearing.

Even if the issue was in dispute, its resolution was not required for the Commission's ruling on Smithway's application. The granting of an application depends upon "the present or future public convenience and necessity * * *." 49 U.S.C. § 307. Past services of Crete Carrier are not necessarily material.

Next Crete Carrier contends that an oral hearing is required to determine its present ability to serve D & L in the transportation service that is the subject of Smithway's application. Crete Carrier states that it has the type of equipment needed to transport the involved traffic. D & L and Smithway argue that it does not.

In reviewing Acklie's verified statement, we find that no real dispute exists. He stated:

> In the event that there is flatbed traffic to move, Crete has made arrangements to lease one flatbed trailer unit to be used by Douglas & Lomason as they require. Additional negotiations are now being conducted and Crete expects to finalize within one week the repurchase or lease from Andrew Van Lines for two pieces of flatbed trailer equipment previously sold to them.

The verified rebuttal statements submitted by Smithway and D & L support their contention that Crete Carrier had not made flatbed equipment available to D & L as of the dates of the statements. Smithway, on the other hand, had more than sufficient equipment to meet D & L's needs.

Finally Crete Carrier submitted an exhibit attached to Acklie's statement which indicated that it had transported 123 past shipments of "iron and steel articles" for D & L. D & L denied that Crete Carrier had ever transported the "involved traffic" for it.

Although Smithway's application states that it is seeking a certificate or permit to transport "iron and steel articles" generally, in his verified statement Brewer stated:

> Our purpose in supporting Smithway Motor Xpress is primarily for the handling of wide width steel coils, which weigh an average from 15,000 to 25,000 pounds.

Crete Carrier's evidence indicates that it has handled traffic in iron and steel tubing and other articles not requiring flatbed trailers, but there is no evidence that it transported wide width steel coils for D & L. There really is no dispute here.

## IV.

Crete Carrier argues that even if it was not necessary for the Commission to conduct a hearing in this case, it committed reversible error in failing to resolve alleged factual disputes. Although we would agree that the Review Board's order is not as clear as it might be, we find no reversible error in this regard.

The Review Board did not ignore Crete Carrier's allegations of Smithway's unfitness. It took note of them, found them to be vague and general, and apparently found them insufficient to defeat Smithway's application.

As to Crete Carrier's willingness and ability to serve D & L in the involved traffic, the Board stated:

> we are not convinced that protestant's van trailers are suitable for the transportation of wide width steel coils; that though protestant may once have provided a flat-bed service for shipper, it does not presently do so, and we are not convinced that it possesses sufficient flat-bed equipment to provide feasible service for shipper; * * *.

Thus, it also addressed Crete Carrier's other allegations.

Since we find no legal error or abuse of discretion in the Commission's denial of an oral hearing and no merit to Crete Carrier's other contentions, we deny its petition.