AERO MAYFLOWER TRANSIT COMPA-
NY, INC., Allied Van Lines, Inc., Global
Van Lines, Inc., Imperial Van Lines,
Inc., Wheaton Van Lines, Inc., Petition-
ers,

v.

INTERSTATE COMMERCE COMMIS-
SION and the United States of
America, Respondents.

Alliance Moving & Storage, Inc., Belknap
Van & Storage of San Antonio, Inc., et
al., Sherwood Van Lines, Inc., Moyer &
Sons, Inc., et al., Richardson Transfer &
Storage Co., Inc., et al., K.T.I., Ltd., et
al., Barnes Moving & Storage Co., Inc.,
Intervenors.

WHEATON VAN LINES, INC., et
al., Petitioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and the United States of
America, Respondents,

Weleski Transfer, Inc., Vesely Bros. Mov-
ing & Storage, Inc., Snyder Brothers
Moving, Inc., d/b/a George Transporta-
tion Company, O'Rourke Storage &
Transfer Co., Forest Hills Transfer &
Storage, Meadville Moving & Storage,
Inc., Campbell Transfer & Storage Co.,
Inc., Executive Transportation Services,
Inc., et al., F & S Moving & Storage,
Inc., et al., Cotter Moving & Storage
Company, Golden Van Lines, Inc., et al.,
Millstead Van Lines, Inc., Intervenors.

ALLIED VAN LINES, INC., et
al., Petitioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and the United States of
America, Respondents,

Gilmore Moving & Storage,
Inc., Intervenor.

GLOBAL VAN LINES, INC., et
al., Petitioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and .the United States of
America, Respondents,

Fidelity Storage Corp., Intervenor.

ALLIED VAN LINES, INC., et
al., Petitioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and the United States of
America, Respondents,

Republic Portsmouth Storage Corpora-
tion, et al., Intervenor.

GLOBAL VAN LINES, INC., et
al., Petitioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and the United States of
America, Respondents,

Stevens Van Lines, Inc., Parks Moving &
Storage, Inc., South Hills Movers, Inc.,
Quality Movers, Inc., et al., Albert Mov-
ing & Storage, Inc., et al., Arrow Trans-
fer & Storage Company, Intervenors.

IMPERIAL VAN LINES, INC., et
al., Petitioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and the United States of
America, Respondents,

Thompson Van Lines, Inc., Ferguson Van
Lines,Inc., Florida-Eastern U.S. Van
Lines, Inc., et al., Intervenors.

Nos. 80–1990, 80–2548, 81–1519, 81–1647,
80–2361, 80–2501 and 80–2502.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 2, 1982.
Decided Aug. 10, 1982.

Stanley I. Goldman, Washington, D. C., with whom Alan F. Wohlstetter, Washington, D. C., was on the brief, for petitioners.

Evelyn G. Kitay, Atty., I.C.C., Washington, D. C., with whom Robert S. Burk, Acting Gen. Counsel, Kathleen M. Dollar, Associate Gen. Counsel, I.C.C., and Robert B. Nicholson and Nancy Garrison, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondents. Robert J. Wiggers, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for respondents.

Robert J. Brooks, Broadus, Mont., was on the brief, for intervenor, Sherwood Van Lines, Inc., in No. 80–1990.

David Earl Tinker, Washington, D. C., was on the brief, for intervenors, Belknap Van & Storage of San Antonio, et al., in

Nos. 80–1990 and 80–2501, and entered appearances for Ferguson Van Lines, Inc., et al., in Nos. 80–2502, 80–2548 and 81–1519.

Robert J. Gallagher, Westboro, Mass., was on the brief, for intervenors K.T.I., Ltd., et al., in No. 80–1990, and entered an appearance for intervenor Republic Portsmouth Storage Corp., et al., in Nos. 80–2361, 80–2501, 80–2502 and 80–2548.

J. G. Dail, Jr., McLean, Va., was on the brief, for intervenors, Golden North Van Lines, Inc., et al., in No. 80–2548.

John H. Caldwell and Denise M. O'Brien, Washington, D. C., were on the brief, for intervenor Fidelity Storage Corp., in No. 81–1647.

John A. Vuono and Donald J. Balsley, Jr., Pittsburgh, Pa., were on the brief, for intervenor Parks Moving & Storage, Inc., in Nos. 80–2501 and 80–2548.

Thomas R. Kingsley, Silver Spring, Md., was on the brief, for intervenors Cotter Moving & Storage Co., et al., in No. 80–2548.

Jacob P. Billig and Mark J. Fritz, Washington, D. C., entered appearances for intervenor Alliance Moving & Storage, Inc., in No. 80–1990.

Dean N. Wolfe, Gaithersburg, Md., entered an appearance for intervenor Moyer & Sons, Inc., et al., in No. 80–1990.

Charles Ephraim and James F. Flint, Washington, D. C., entered appearances for intervenor Richardson Transfer & Storage Co., Inc., et al., in No. 80–1990.

Archie B. Culbreth entered an appearance for intervenor Barnes Moving & Storage Co., Inc., in No. 80–1990.

Robert W. Gerson, Atlanta, Ga., entered an appearance for intervenor Arrow Transfer & Storage Co., in No. 80–2501.

Herbert Alan Dubin, Washington, D. C., entered an appearance for intervenor Quality Movers, Inc., et al., in No. 80–2501.

Robert Lewis Thompson, Betty Jo Christian and Nancy J. Hutzel, Washington, D. C., entered appearances for intervenor Thompson Van Lines, Inc., in No. 80–2502.

Before ROBINSON, Chief Judge, ROBB, Senior Circuit Judge, and LARSON,* Senior District Judge for the District of Minnesota.

Opinion for the court filed by Senior Circuit Judge ROBB.

ROBB, Senior Circuit Judge:

Petitioners, six household goods carriers,[1] challenge the Interstate Commerce Commission's grant of applications for certificates of motor carrier authority to transport property for the federal government.[2] Petitioners rest their challenge on four grounds: they contend that the Commission (1) acted in excess of its jurisdiction under section 5(b)(3) of the Motor Carrier Act of 1980 by issuing 136 of the certificates on the basis of a general finding of public convenience and necessity developed in a

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Petitioners are Aero Mayflower Transit Co., Inc., Allied Van Lines, Inc., Global Van Lines, Inc., Imperial Van Lines, Inc., Imperial Van Lines, Inc.—West, and Wheaton Van Lines, Inc.

2. The 160 applications were granted in a series of seven Commission decisions each titled by the name of first applicant: (1) Sherwood Van Lines, Inc., No. GT–2–80 (I.C.C. June 16, 1980) (24 applications) (J.A. at 20); (2) the Andrews Moving & Storage Co., No. GT–53–80 (I.C.C. Div. 1 Aug. 29, 1980) (29 applications) (J.A. at 30, 40); (3) Nilson Van & Storage Co., Inc., No. GT–558–80 (I.C.C. Div. 2 Sept. 26, 1980) (36 applications) (J.A. at 36, 43); (4) Academy Van & Storage Co., Inc., No. GT–393–80 (I.C.C. Div. 1 Sept. 29, 1980) (25 applications) (J.A. at 34, 45); (5) Ideal Way Movers, Inc., No. GT–790–80 (I.C.C. Div. 2 Oct. 9, 1980) (41 applications) (J.A. at 38, 47); (6) James M. Barnett & Mrs. James M. Barnett, No. GT–1015–80 (I.C.C. Div. 1 Apr. 10, 1981) (4 applications) (J.A. at 49, 51); (7) Fidelity Storage Corp., No. GT–1031–80 (I.C.C. Div. 1 May 29, 1981) (1 application) (J.A. at 53, 55). In its brief the Commission indicates there were 158 applications granted. (Brief for Respondents at 3) On the record submitted to this court, however, it appears that 160 applications were granted in the challenged decisions. See J.A. at 20–22, 30–32, 34 & n.1, 36 & n.1, 38 & n.1, 49 & n.1, 55.

rulemaking proceeding;[3] (2) acted contrary to section 5(b)(1)(A) of the Motor Carrier Act of 1980 by failing to consider all relevant factors in determining whether the applicants were fit, willing, and able to provide the transportation to be authorized by the certificates;[4] (3) acted contrary to section 706(2)(E) of the Administrative Procedure Act of 1966 by making findings of fitness that were unsupported by substantial evidence;[5] and (4) acted in violation of section 557(c) of the Administrative Procedure Act by failing to explain the findings of fitness.[6] We agree with petitioners' first argument, but reject the other three.

On May 26, 1977 rulemaking proceedings, known as *Ex Parte* No. MC–107, were begun to establish simplified procedures for certification of motor carriers to transport property for the federal government. *Transportation of Government Traffic Ex Parte* No. MC–107. Under the procedures previously in existence a carrier desiring to carry government traffic was required to file an application seeking a certificate of public convenience and necessity, and this application was treated in the same way as one from any carrier seeking any new operating authority. Pursuant to 49 U.S.C. § 10922(a) (Supp. III 1979) (amended 1980), the Commission then determined whether the particular authority applied for was "required by the present or future public convenience and necessity" and whether the

**3.** Section 5(b)(3) provides:

> The Commission may not make a finding relating to public convenience and necessity under paragraph (1) of this subsection which is based upon general findings developed in rulemaking proceedings.

Pub.L.No.96–296, 94 Stat. 793, 794 (1980) (codified at 49 U.S.C.A. § 10922(b)(3) (West Supp. 1982)). Review is requested under section 706(2)(C) of the Administrative Procedure Act of 1966, which provides:

> The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right....

Pub.L.No.89–554, 80 Stat. 378, 393 (1966) (codified at 5 U.S.C. § 706(2)(C) (1976)).

> Petitioners' first contention does not go to the 24 applications granted in Sherwood Van Lines, Inc., No. GT–2–80 (I.C.C. June 16, 1980) (hereinafter referred to as "the *Sherwood* cases"), which became final before July 1, 1980, the effective date of the Motor Carrier Act of 1980. *See* Brief for Petitioners at 20. The argument is directed only at applications granted after July 1, 1980.

**4.** Section 5(b)(1)(A) provides:

> Except as provided in this section, the Interstate Commerce Commission shall issue a certificate to a person authorizing that person to provide transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title as a motor common carrier of property if the Commission finds ... that the person is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission....

Pub.L.No.96–296, 94 Stat. at 794 (codified at 49 U.S.C.A. § 10922(b)(1)(A) (1982)). Review is requested under section 706(2)(A) of the Administrative Procedure Act of 1966 which provides:

> The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...,

Pub.L.No.89–554, 80 Stat. at 393 (codified at 5 U.S.C. § 706(2)(A) (1976)).

**5.** Section 706(2)(E) provides:

> The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute....

Pub.L.No.89–554, 80 Stat. at 393 (codified at 5 U.S.C. § 706(2)(E) (1976)). Review is requested under the same statute.

**6.** Section 557(c) provides in relevant part:

> The record shall show the ruling on each finding, conclusion, or exception presented. All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of ... findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record....

Pub.L.No.89–554, 80 Stat. at 387 (codified at 5 U.S.C. § 557(c) (1976)). Review is requested under section 706(2)(D) of the Administrative Procedure Act of 1966, which provides:

> The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... without observance of procedure required by law ....

Pub.L.No.89–554, 80 Stat. at 393 (codified at 5 U.S.C. § 706(2)(D) (1976)).

applicant was "fit, willing, and able" to provide the transportation to be authorized. This procedure was changed by the rules promulgated in *Ex Parte* No. MC–107. In that proceeding the Commission made a general finding that the present and future public convenience and necessity require operations by any qualified motor carrier in the transportation of general commodities (with certain exceptions) for the federal government. 131 M.C.C. at 865. This so-called "Master Certificate", therefore, eliminated the requirement of an individual finding of public convenience and necessity with respect to each application; under the *Ex Parte* MC–107 procedures an applicant was required only to file an affidavit demonstrating fitness. 131 M.C.C. at 868. Statements by protestants were limited to the issue of the applicant's fitness and capacity to conform to the Interstate Commerce Act. The new rules became effective March 18, 1980.

On July 1, 1980 the Motor Carrier Act of 1980 became law. Section 5(b)(3) of the Act provides:

> The Commission may not make a finding relating to public convenience and necessity under paragraph (1) of this subsection which is based upon general findings developed in rulemaking proceedings.

Pub.L.No.96–296, 94 Stat. at 794 (codified at 49 U.S.C.A. § 10922(b)(3) (West Supp. 1982)). On June 3, 1980 in accordance with this mandate, the Commission repealed the MC–107 rules providing for master certificate procedures. 45 Fed.Reg. 45,534 (July 3, 1980), corrected 45 Fed.Reg. 52,158 (August 6, 1980). The Commission now contends, however, that the MC–107 procedures may be used for processing applications filed before the July 1, 1980 effective date of the Act, even though individual certificates on the applications had not been completed before July 1.[7] The Commission

reasons that although the Act prohibits the Commission from making a public need determination based on general findings in a rulemaking proceeding, no public need finding was made after July 1, 1980, with respect to applications filed before that date; that finding, says the Commission, had been made before July 1, 1980 in the MC–107 proceedings. In the opinion of the Commission, therefore, the only issue remaining to be resolved was that of fitness, and the standards in that respect were unchanged by the Motor Carrier Act.

Applications for 136 of the certificates challenged in this case were filed before July 1, 1980, but certificates were not issued until after that date. The certificates were based on the general findings made in *Ex Parte* MC–107.

It is apparent that the premise of the Commission's argument is that the effect of section 5(b)(3) of the Motor Carrier Act is only to forbid the Commission to make a finding of public convenience and necessity based upon the general findings developed in *Ex Parte* MC–107; in other words, the Commission says that the focus of the statute is on the making of a finding. According to the Commission, therefore, it must follow that because the general findings in these cases were made before July 1, 1980, certificates based on those findings might be issued to the applicants after July 1. We think, however, that the weakness of the Commission's argument is the premise that the focus of the statute is on the making of a finding. In our opinion the purpose of the statute was to prohibit the issuance of any certificate based on general findings.

Although we recognize that due deference should be accorded statutory interpretation by an agency which has the responsibility for administering the statute, statutory construction ultimately is a judi-

---

7. In repealing the MC–107 procedures the Commission first said the procedures would continue to be used for all applications that had been filed *and* submitted to the Federal Register for notice publication prior to the July 1, 1980 effective date of the Motor Carrier Act. 45 Fed.Reg. 45,538 (July 3, 1980). The Com-

mission later determined that fairness would best be served by applying the MC–107 procedures to all applications that had been filed prior to the effective date of the Act even if the Commission had not yet submitted the applications to the Federal Register for notice publication. (J.A. at 164–65)

cial function. *Nepera Chemical, Inc. v. FMC*, 213 U.S.App.D.C. 173, 176, 662 F.2d 18, 21 (1981) (quoting *Austasia Intermodal Lines, Ltd. v. FMC*, 188 U.S.App.D.C. 379, 381, 580 F.2d 642, 644 (1978)). In fulfilling that judicial duty we conclude that the Commission's construction of the statute is undercut by the legislative history of section 5(b)(3), and that the statute properly construed is directed at the issuance of certificates, rather than the making of findings. The purpose of Congress, we think, was to do away entirely with the use of master certificates to support grants of operating authority.

The Motor Carrier Act originated in Senate Bill No. 2245. In that bill the predecessor of section 5(b)(3) read:

In no event may the Commission *issue any certificate* based upon general findings regarding public convenience and necessity developed in rulemaking proceedings.

*See* S.Rep.No.641, 96th Cong., 2d Sess. 59 (March 24, 1980) (emphasis added). In the Senate Report it was made clear that as the plain language of the bill indicated, the focus of the proposed provision was to be "the issuance of a certificate", rather than "the making of a finding":

[The provision] specifically states that *the Commission may not issue any certificate* based upon general findings regarding public convenience and necessity developed in rulemaking proceedings. The purpose of this provision is to prevent the Commission from instituting the so-called "master certificate" approach to granting certificates.

*Id.* at 24 (emphasis added).

[The provision] specifically prohibits the Commission from instituting the so-called "master certificate" approach to granting certificates. That approach is one that the Commission has adopted in some limited areas and is considering using in other areas. Pursuant to that approach, the Commission makes one general finding of public need for a specific type of transportation without looking at the individual carriers and situations involved.

*Henceforth, the Commission will be obligated to look at each application and decide whether the transportation would be inconsistent with the public need.*

*Id.* at 6 (emphasis added).

The Senate passed this provision unchanged on April 15, 1980. 128 Cong.Rec. S3639 (daily ed. April 15, 1980). Had the provision been left unchanged by the House of Representatives it would be clear that the Commission erred in this case by issuing certificates based upon a general finding developed in a rulemaking proceeding.

Upon considering Senate Bill No. 2245, the House amended it by deleting the entire bill and substituting the provisions of House Bill No. 6418; as amended the Senate Bill was passed by the House on June 19, 1980. 128 Cong.Rec. H5414 (daily ed. June 19, 1980). It is in the original version of House Bill No. 6418 that the present language of section 5(b)(3) of the Motor Carrier Act is found. *See* H.Rep.No.1069, 96th Cong., 2 Sess. 78 (June 3, 1980), U.S.Code Cong. & Admin.News 1980, p. 2283. In spite of the change in language, however, we think the House did not intend any change in the meaning. The House Report explains:

[The provision] specifically states that *the Commission may not issue any certificate* based upon general findings regarding public convenience and necessity developed in rulemaking proceedings. The purpose of this provision is to ban the use of the so-called master certificate approach to granting certificates.

*Id.* at 15 (emphasis added), U.S.Code Cong. & Admin.News 1980, p. 2297. As in the Senate Report, emphasis is on "the issuance of a certificate", not "the making of a finding."

The Senate Bill, as amended by the House, was passed by the Senate on June 20, 1980. 128 Cong.Rec. S7687 (daily ed. June 20, 1980). The sponsors of the original Senate Bill, Senators Cannon and Packwood, cited some provisions of the bill that had been changed and remarked that the remainder was essentially the same. Section 5(b)(3) was not cited as a changed provision. 128 Cong.Rec. S7684–87 (daily ed. June 20, 1980).

We conclude that Congress intended to prohibit the "issuance of a certificate" based on a general finding developed in a rulemaking proceeding if the certificate was issued after the July 1, 1980 effective date of the Motor Carrier Act.[8] Our interpretation of the statute conforms to the legislative intent. *See FBI v. Abramson*, —— U.S. ——, —— & n.7, 102 S.Ct. 2054, 2061 & n.7, 72 L.Ed.2d 376 (1982); *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981); *Nepera Chemical, Inc. v. FMC*, 213 U.S. App.D.C. 173, 177, 662 F.2d 18, 22 (1981).

■■■ At the hearings before both the Senate and House Committees the ICC opposed any legislation that would prohibit the use of master certificates. *See Economic Regulation of the Trucking Industry: Hearings on S. 2245 Before the Senate Committee on Commerce, Science, and Transportation*, 96th Cong., 2d Sess. 1856 (1980); *Examining Current Conditions in the Trucking Industry and the Possible Necessity for Change in the Manner and Scope of its Regulation, Part 3; Hearings on H.R. 6418 Before the Subcommittee on Surface Transportation of the House Committee on Public Works and Transportation*, 96th Cong., 2d Sess. 1021, 1043–44 (1980). Having lost this debate the Commission was prohibited by the Motor Carrier Act from using a master certificate to support the issuance of any certificates after the July 1, 1980 effective date of the Act. Thus the 136 certificates issued after the July 1, 1980 effective date[9] were issued in violation of the policy established by Congress in section 5(b)(3) of the Act.[10] They should not have been issued.

The Act, 49 U.S.C. § 10922(b)(1), requires that before a certificate may be issued an applicant for motor carrier authority must be found fit, willing, and able properly to perform the proposed service. The petitioners challenge the Commission's determination that those who applied to move used household goods for the government pursuant to the MC–107 rules were fit. They contend that the Commission did not consider relevant factors or apply any expressed standards in its fitness determinations. We do not agree.

The MC–107 rules required each applicant to file an affidavit containing the following information:

(1) The name and address of the carrier and its representative (which may include the individual in a self-representing role) to whom inquiries may be made.

8. The Commission infers in a footnote in its brief that none of the certificates at issue was granted after the July 1, 1980 effective date of the Motor Carrier Act. The inference is that a "master certificate" was issued in the MC–107 proceeding on January 11, 1980 and individual carriers were only "sent a letter notifying them that they had been found eligible to 'operate under the master certificate'" after a fitness-affidavit had been approved. (Brief for Respondents at 17 n.11) As the Commission must recognize, considering the space devoted to this point in its brief, such an argument would be wholly without merit. The statutory scheme allows the Commission to issue a certificate *only* after finding both that the certificate is required by the present or future public convenience and necessity *and* that the applicant is fit, willing, and able to carry out the authority given by the certificate. *See* 49 U.S.C. § 10922(a) (Supp. III 1979) (amended 1980). *See also* Motor Carrier Act of 1980, Pub.L.No. 96–296, § 5(b)(1), 94 Stat. 793, 794 (1980) (codified at 49 U.S.C.A. § 10922(b)(1) (West Supp. 1982)). Furthermore, in its decisions in the MC–107 proceeding the Commission recognized that a certificate could not be issued until after a fitness determination had been made. *See, e.g.*, 129 M.C.C. at 641; 131 M.C.C. at 860. (J.A. at 120, 155)

9. The 24 applicants in the *Sherwood* cases were granted certificates on June 16, 1980. *See* note 3 *supra.*

10. In a final attempt to avoid the impact of section 5(b)(3) of the Motor Carrier Act of 1980 the Commission contends that applying the Act to applications filed prior to its effective date would be a retroactive application of the Act. Brief for Respondents at 20–21. We disagree. "[A] change of law pending an administrative hearing must be followed in relation to permits for future acts. Otherwise the administrative body would issue orders contrary to the existing legislation." *Ziffrin, Inc. v. United States*, 318 U.S. 73, 78, 63 S.Ct. 465, 468, 87 L.Ed. 621 (1943). The Motor Carrier Act of 1980 is controlling in processing applications for motor carrier authority pending on the effective date of the Act.

(2) The designation of the carrier's statutory agent for service of process within each of the States in or through which operations are proposed to be conducted (form BOC–3).

(3) Evidence of the carrier's insurance coverage (forms BMC–90 and BMC–91) or a statement that such evidence is currently on file at this Commission.

(4) A statement describing the operations to be initiated under the master certificate. The statement will include the identity of the Government shipper involved.

(5) A statement demonstrating applicant's fitness to operate under the master certificate. This statement should include evidence of operational and financial ability and of a willingness to comply with the necessary regulatory requirements. Applicant should also divulge information of any affiliation between it and any carrier subject to this Commission's regulations.

(J.A. 159)

The rules further provided that when a proper request for authority had been filed the Commission would publish a notice in the Federal Register identifying the applicant and the government agency involved. Any interested person could then file a verified statement in opposition on fitness grounds which would be served upon the applicant. In the event of a protest the application would be processed and a determination of the applicant's fitness made on the basis of the record.

It is undisputed that each applicant in this case submitted the required affidavit. The protestants submitted almost identical statements in opposition to each application. In general, the protests alleged that the applicants had not established that they had the requisite operational capacity or ability to operate as a motor common carrier throughout the United States, or how many agents the applicants had or would be able to obtain, or the extent of empty operations which would result from the applicants' transportation of government traffic nationwide.

■ The Commission considered the protests but found that the protestants had "failed to refute the showing of fitness of which each applicant has made", that the protestants had not "offered any concrete evidence which might suggest that any applicant is not fit and able to serve the government satisfactorily." (J.A. 24) Accordingly the Commission concluded that the evidence presented was sufficient to make a fitness determination and that "each applicant has made an adequate showing that it is qualified to operate . . . ." (J.A. 23; see also J.A. 24, 36–37, 43, 44, 34, 35, 45–46, 49–52, 38, 39, 53–56, 30–33, 40–42.) We think the Commission must be sustained. The facts set out in the sworn applications were those traditionally relied upon by the Commission in determining fitness. General allegations that those facts did not demonstrate fitness did not justify the rejection of the applications.

The petitioners argue that the Commission should have specifically addressed their claims that many applicants, as small carriers, would not be able to perform operations under the 50-State General Commodity Authority granted. In the MC–107 proceeding, however, the Commission had rejected the argument that small carriers should be deprived of government traffic authority; and there was no reason to repeat this discussion in each individual case.

■ It must be remembered that the determination of a carrier's fitness and ability to operate is entrusted to the Commission, and its decision on this question may not be set aside by the court unless it is unsupported by substantial evidence or is arbitrary or capricious. *Armored Carrier Corp. v. United States*, 260 F.Supp. 612, 615 (E.D. N.Y.1966), *aff'd*, 386 U.S. 778, 87 S.Ct. 1476, 18 L.Ed.2d 524 (1967), *reh'g. denied*, 388 U.S. 924, 87 S.Ct. 2106, 18 L.Ed.2d 1378 (1967). It is not the function of a reviewing court to reweigh the evidence or substitute its judgment for that of the agency. *Ralston Purina Co. v. Louisville & Nashville R.R. Co.*, 426 U.S. 476, 477–78, 96 S.Ct. 2160, 2161, 48 L.Ed.2d 781 (1976).

What we have said is enough to dispose of the argument that the Commission's findings of fitness are unsupported by substantial evidence. Each sworn application presented a detailed statement showing operational and financial ability as well as a past record demonstrating willingness to comply with regulatory requirements. It is not for us to substitute our judgment for that of the Commission by holding that such evidence was not substantial.

Finally, we reject the contention that the Commission's findings of fitness are unsupported by the necessary subsidiary findings. The Administrative Procedure Act requires an agency to include in its decision a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c) (1976). We are not, however, "disposed to overturn a sound decision if the agency's path, although not ideally clear, may reasonably be discerned." *Benmar Transport & Leasing Corp. v. ICC*, 623 F.2d 740, 746 (2d Cir. 1980) (citations omitted). *See also International Detective Service, Inc. v. ICC*, 198 U.S.App.D.C. 334, 344, 613 F.2d 1067, 1077 (1979); *Greater Boston Television Corp. v. FCC*, 143 U.S.App.D.C. 383, 393, 444 F.2d 841, 851, *cert. denied*, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). In this case the Commission consolidated a number of records in each case that it decided. As a result a specific explanation of the findings underlying each individual decision is lacking. Nevertheless, the Commission's path is easily discerned.

Petitioners use the decision in the *Sherwood* case as their first example of inadequate findings. In the *Sherwood* cases, however, the Commission explained:

> Each applicant has met all requirements listed for eligibility to operate under the master certificate including service agent, insurance filings, description of operations to be initiated if found eligible to participate, and evidence of operational and financial ability and of a willingness to comply with the necessary regulatory requirements.
>
> \*   \*   \*   \*   \*   \*
>
> We believe that each applicant has made an adequate showing that it is qualified to operate under the master certificate. It should be noted that the procedures established were designed to provide a simplified and expedited means for the filing and handling of applications seeking the right to operate under the terms of the regulations adopted and the master certificate pertaining to these regulations. Here applicants submitted fitness statements and protestants filed verified statements in response. The evidence presented is sufficient for us to make a fitness determination.
>
> Protestants have failed to refute the showing of fitness of [sic] which each applicant has made. Each is an operating company with experience in providing transportation service. Protestants have cited no instances of misconduct by any applicant, nor have they offered any concrete evidence which might suggest that any applicant is not fit and able to serve the government satisfactorily.

(J.A. at 22–24) The findings in the *Sherwood* case are representative of the findings in the other decisions.[11] Under the standard of review to be applied we cannot say that the Commission had inadequately explained any of its findings of fitness.

In conclusion we reject petitioners' challenges to the Commission's findings of fitness. We find that the criteria used were a proper expression of the "fit, willing, and able" requirement of section 5(b)(1)(A) of the Motor Carrier Act of 1980, Pub.L.No. 96–296, 94 Stat. at 794 (codified at 49 U.S.C.A. § 10922(b)(1)(A) (West Supp. 1982)). Furthermore we hold that the findings were supported by substantial evidence as required by section 706(2)(E) of the Administrative Procedure Act of 1966, Pub.L.No. 89–554, 80 Stat. at 393 (codified at 5 U.S.C.

---

11. The parties have not supplied this court with all the fitness affidavits filed with the Commission. We assume, however, that if the fitness affidavits submitted were not representative petitioners would have so informed the court and supplemented the record.

§ 706(2)(E) (1976)), and that the findings were adequately explained under section 557(c) of the Administrative Procedure Act of 1966, Pub.L.No.89–554, 80 Stat. at 387 (codified at 5 U.S.C. § 557(c) (1976)). We agree with petitioners, however, that the Commission granted 136 of the challenged applications in violation of section 5(b)(3) of the Motor Carrier Act of 1980, Pub.L.No. 96–296, 94 Stat. at 794 (codified at 49 U.S. C.A. § 10922(b)(3) (West Supp.1982)) by using as a finding of public convenience and necessity a general finding developed in the MC–107 rulemaking proceeding. As to these 136 applications we reverse and remand to the Commission for proceedings in accordance with this opinion.

*So ordered.*